# EXHIBIT 6

1          UNITED STATES DISTRICT COURT

2      WESTERN DISTRICT OF WASHINGTON AT SEATTLE

3   _____

4                          )
    DENNIS MONTGOMERY,       ) C15-1955-JRL
5                           )
              Plaintiff,    ) SEATTLE, WASHINGTON
6                           )
    v.                      ) February 3, 2016
7                           )
    JAMES RISEN, et al.,    ) Motion Hearing
8                           )
              Defendants.   )
9   _____

10
              VERBATIM REPORT OF PROCEEDINGS
11       BEFORE THE HONORABLE JAMES L. ROBART
              UNITED STATES DISTRICT JUDGE
12  _____

13

14  APPEARANCES:

15

16

17  Plaintiff appearing     Dennis Montgomery
    pro se:                 675 NW 85th Court #103
18                          Miami, Florida  33126

19

    For the Defendant:      Eric M. Stahl
20                          Davis Wright Tremaine
                            1201 Third Avenue
21                          Suite 2200
                            Seattle, WA  98101
22

    Other Interested        Istvan Andras Burgyan
23  Party appearing pro     4425 Issaquah Pine Lake Road SE
    se, re: Subpoena        Apt. A-31
24  directed to Istvan      Sammamish, WA  98075-6255
    Andras Burgyan
25

1      THE CLERK:  Case C15-1955, Dennis Montgomery versus

2   James Risen.  Counsel, please make your appearances for the

3   record.

4      MR. STAHL:  Good morning, Your Honor, Eric Stahl from

5   Davis Wright Tremaine, here on behalf of defendants James

6   Risen and Houghton Mifflin Harcourt.

7      MR. BURGYAN:  Good morning, Your Honor, Istvan

8   Burgyan just representing myself.

9      THE COURT:  Mr. Burgyan.

10      MR. MONTGOMERY:  I'm here on the phone, Your Honor,

11   I'm Dennis Montgomery.

12      THE COURT:  All right.  Thank you, Mr. Montgomery.

13   Counsel, the matter that is before me is a motion to compel

14   compliance with a subpoena directed at Mr. -- is it Burgyan,

15   sir, I want to make sure I pronounce it correctly?

16      MR. BURGYAN:  It's Burgyan, but that's okay.

17      THE COURT:  All right.  That's a motion brought by

18   defendants.  So, Mr. Stahl, I'll hear from you first.

19      MR. STAHL:  Thank you, Your Honor.  The defendants'

20   position on this matter is pretty straightforward.  They are

21   defending a defamation claim, seeking literally hundreds of

22   millions of dollars.  The plaintiff, Mr. Montgomery, has

23   named Mr. Burgyan as a trial witness, named him in August.

24   For that reason, alone, we think we are entitled to conduct

25   discovery from him.  And he is also relevant on a few broad

1    issues in the case, which I'll talk about in a minute.

2       I want to address a couple procedural matters first, just

3    some housekeeping.  I hope the court received the

4    supplemental authority we submitted last week.  I just want

5    to make sure the court is aware the matter was transferred

6    last week from Florida to the District of D.C.

7              THE COURT:  I'm aware of that.

8              MR. STAHL:  Okay.  Nothing much has happened yet in

9    D.C.  We have a case number.  I've been told the parties are

10   seeking a case schedule, in which we will be seeking

11   sufficient time for a couple of things.  This discovery, for

12   one, giving the District of D.C. time to rule on our

13   dispositive motions as well.

14      I also want to make the court aware that last night,

15   shortly after 6:00 p.m. Eastern time, Mr. Montgomery filed a

16   motion in the District of Columbia, or his counsel

17   Mr. Klayman did, seeking a protective order barring this

18   deposition, essentially attaching, really just attaching the

19   papers that Mr. Montgomery filed pro se in this action.

20      We don't think that affects this proceeding at all under

21   FRCP 45(d)(3).  It's clear that a motion to quash or enforce

22   a subpoena is properly brought in the district where the

23   subpoena is enforceable, in this case, the Western District

24   of Washington.  But I wanted to make the court aware of it.

25   And if Your Honor is interested, I have a copy of that motion

1    if the court feels --

2            MR. MONTGOMERY:  Mr. Burgyan got a copy.

3            THE COURT:  All right.

4            MR. STAHL:  On to the substance of the motion.  The

5    defendants seek to compel Mr. Burgyan to comply with their

6    subpoena.  He lives here in Washington in Sammamish.  He is

7    the son-in-law of the plaintiff and he worked with the

8    plaintiff, Mr. Montgomery, at a company Blxware, that

9    contracted with the U.S. Government, and dealt in the

10   software that is at the heart of this underlying lawsuit.

11       Again, this is a defamation action.  The author/journalist

12   Mr. Risen wrote a book about the war on terror, and among

13   other things --

14           THE COURT:  I've read your pleadings, counsel.

15           MR. STAHL:  Okay.  I'll cut to the chase, then.  The

16   book, as you know, focuses on software that, in the wake of

17   9/11, was sold to the CIA as being able to detect various

18   terror elements, including supposedly decoded messages from

19   Al Jazeera broadcasts regarding targeted flights.  The

20   government ultimately concluded that the software didn't work

21   and was a hoax.

22       In the Florida action --

23           MR. MONTGOMERY:  That is absolutely not true.

24           THE COURT:  Mr. Montgomery, you'll get your

25   opportunity to speak.  Do not interrupt.

1     MR. MONTGOMERY:  I'm sorry, Your Honor.  I'm sorry.

2     MR. STAHL:  In the Florida action the magistrate

3  correctly recognized that whether or not Mr. Montgomery's

4  software worked as advertised or was a hoax, is the heart of

5  the matter.  It's a defamation case.  It's his burden to

6  prove falsity.  And, therefore, whether the software works or

7  not is a critical fact.

8     He directed Mr. Montgomery in the underlying action to

9  produce the software.  For a variety of reasons,

10  Mr. Montgomery has either been unable to or refused to do so.

11  But that software is very much in issue.

12     So where does Mr. Burgyan come in?  First of all, he's

13  again a trial witness, and he's not in kind of the

14  peanut-gallery section of the trial list of 50 witnesses.

15  Mr. Burgyan is the third trial witness.  There are two

16  witnesses whose names are redacted, and then Mr. Burgyan

17  appears even ahead of Mr. Risen.  So my clients have a real

18  concern if he's going to be a trial witness, that that ought

19  to be dispositive of our right to take his deposition and

20  obtain discovery from him.

21     Beyond that, we want to talk to Mr. Burgyan, because if he

22  weren't a trial witness he has relevant evidence on three

23  broad points in this case.  First is the software itself.

24  He worked for three years, according to his LinkedIn page, as

25  a special projects manager for a company called Blxware,

1   which is one of the two companies that had access to this

2   software.  So we believe he has information about the

3   operation or performance of the software.  Again, as to

4   whether it works or not, which is highly relevant in the

5   underlying case, we've asked him to produce the software, if

6   he has it, documents about the software, communications about

7   the software and its whereabouts, as well as communications

8   with other Blxware employees.  And, again, that's important

9   because the software itself, the plaintiff has not been able

10  to produce in the case.

11      The second broad issue where Mr. Burgyan's testimony is

12  relevant is to the issue of damages.  Mr. Montgomery has

13  claimed in his deposition and pleadings, that Mr. Risen's

14  book cost him certain business opportunities in Florida.  And

15  he testified in his deposition that Mr. Burgyan is helping to

16  facilitate and explore these opportunities in Florida.  It

17  goes to damages.

18      Similarly, Mr. Montgomery has stated the book aggravated

19  his health condition.  Mr. Burgyan, in his objections that he

20  faxed to the later version of the subpoena that we served on

21  him, admits he is Mr. Montgomery's primary caregiver.  So he

22  has relevant information about his health, which again goes

23  to damages.

24      The third issue where Mr. Burgyan's testimony is broadly

25  relevant is where Mr. Montgomery resides.  That issue is

1   somewhat less important now that the court in Florida has

2   issued our motion to transfer venue.  But it hasn't gone

3   away.  Mr. Montgomery's residence is still relevant, first of

4   all, to his issue of credibility.  He submitted numerous

5   sworn declarations in Florida, in the Florida action, about

6   his alleged contacts, that we believe were less than candid.

7       It goes to choice of law.  If Mr. Montgomery is a Florida

8   resident, he's alleged that Florida defamation elements are

9   different than the elements of defamation in D.C., and there

10  are some differences in Florida's shield law as well.  And

11  also it goes to this issue of lost business opportunities in

12  Florida.  If Mr. Montgomery had no real contacts with

13  Florida, his damages theory is less credible.

14      So for all those reasons we ask that the court grant the

15  motion.  None of the objections or reasons that the witness

16  or plaintiff have put forward have any merit.  Mr. Burgyan is

17  here, and we'll hear from him, but he did not submit any

18  papers in response to our motion.

19      To the extent Mr. Montgomery has standing to challenge

20  this subpoena, he's claimed that the subpoena was harassing.

21  The magistrate in Florida found it wasn't the case.  He

22  rightfully acknowledged we had some issues with attempts to

23  serve and evasion of service.  He's also contended the

24  discovery deadline has passed.  That issue is now moot,

25  because the case schedule in Florida is now a non-issue, it's

1  been taken off the calendar because the case was transferred

2  to the District of Columbia.

3      So we would respectfully ask the court enforce the

4  subpoena.  Unless the court has questions, that's all that I

5  have.

6          THE COURT:  Thank you.  Mr. Burgyan, I'll hear from

7  you next.

8          MR. BURGYAN:  Thank you, Your Honor.

9          THE COURT:  You might want to raise that microphone.

10          MR. BURGYAN:  Is that better?

11      From what I understand is that the discovery is passed,

12  and it ended on, I believe, the 19th of November.  We -- my

13  father-in-law had submitted a request to extend the

14  discovery, and his side denied it.  So if it was so important

15  to him, why would they deny the extension of discovery?

16          THE COURT:  When did they note your deposition, sir?

17          MR. BURGYAN:  Excuse me?

18          THE COURT:  What day was that filed with the court

19  saying:  We're going to take your deposition?

20          MR. BURGYAN:  I was served on the 5th of November.

21          THE COURT:  That's what I need to know.  Please

22  continue.

23          MR. BURGYAN:  That's basically it, I believe.  It's

24  just harassment on their part, that they want to continue to

25  do this when the time has already passed and they did not

1   want to extend the time.

2          THE COURT:  Well, taking your deposition is not

3   harassment if you're listed as a witness.  So explain to me

4   why this is harassment?

5          MR. BURGYAN:  I believe it is to get to my

6   father-in-law, to give him more stress about it.  Because if

7   it's already past the time, why would they be pursuing it?

8          THE COURT:  Well, it hadn't passed the time at the

9   time they noted your deposition.

10         MR. BURGYAN:  Okay.  I thought it had.

11         THE COURT:  Well, did I misunderstand what you told

12  me that the deadline was the 19th, and they noted it on the

13  5th?

14         MR. BURGYAN:  Yes.  That's when they gave me a date.

15  But I believe I was served incorrectly on that day.

16         THE COURT:  Well, I'm not going to get into the

17  questions of service, because frankly I wasn't there.  But it

18  doesn't sound great in terms of what happened.  All right.

19  Anything else you'd like to say, sir?

20         MR. BURGYAN:  No, Your Honor.

21         THE COURT:  I have one question for you.  You're not

22  registered in terms of receiving electronic service.  Do you

23  have an e-mail address?

24         MR. BURGYAN:  I do.

25         THE COURT:  All right.  Will you consent to using it

1   in this case?

2           MR. BURGYAN:  Yes.

3           THE COURT:  Will you provide it to Mr. Stahl, then?

4           MR. BURGYAN:  Yes, I will.

5           THE COURT:  And also give him your current address.

6   And know that that will become a matter of public record.  If

7   there's a problem with that, you need to be aware of it.  But

8   that's how we get in touch with you is either by sending you

9   an e-mail, which will be contemporaneous with it being filed

10  in the federal docket and/or by mail.  That's why those two

11  things are important.

12          MR. BURGYAN:  Okay.  When would you like me to give

13  him that information, when we're finished?

14          THE COURT:  Yes, just write it out and hand it to him

15  when we're done.

16      Mr. Montgomery, would you like to be heard?

17          MR. MONTGOMERY:  Yes.  To start with, in opposing

18  counsel's opening arguments about me selling software to the

19  CIA and all that, totally a lie.  I've never sold the CIA the

20  Al Jazeera decoding software to the CIA.  But I know this is

21  not the hearing that this is all about.  The lawsuit was

22  filed in February of 2015.  I've had a stroke, Your Honor, so

23  I'm doing my best.  They waited until August to decide -- or

24  whenever, weeks before the cutoff, to serve him.  And

25  Mr. Burgyan provided documents that he was improperly

1    serviced, and so forth.  They didn't object to that until the

2    middle of December.

3        So I would think that the discovery rules have long

4    passed.  I mean, it's February.  We had a trial set for March

5    21st.  Now, their big issue about Mr. Burgyan was

6    jurisdiction and venue.  Well, like you said, that's a moot

7    point since it's now been transferred to D.C.

8        Mr. Burgyan is not a programmer.  All the people that were

9    involved in the technology that I was involved with that he's

10   referring to, Mr. Burgyan wasn't one of them.  I mean, there

11   were people that were in charge of the company that were

12   billionaires.  They didn't subpoena them, I didn't see, or

13   maybe they did and I just don't know.

14       I just think it's awful late in the game, Your Honor, to

15   be trying to serve Mr. Burgyan when we tried to extend the

16   date and they opposed, it which we never were able to extend

17   the date.  I thought as a matter of issue, not only did he

18   have to be served, but when he said that he wouldn't --

19   wasn't going to appear for improper service, they had to get

20   their objections in by that deadline.

21       Now, obviously I'm not an attorney, so I don't know.  I'm

22   not going to take the court's time up dispelling all of the

23   accusations that the opposing counsel made, because they're

24   outrageous.

25       So, I would hope that Your Honor would at least let the

1    judge who is now taking over the case in Washington, D.C.

2    deal with this matter.  Or if Your Honor decides to rule

3    against Mr. Burgyan, we're given an opportunity to appeal.

4    That's all I have to say, Your Honor.

5            THE COURT:  Well, Mr. Montgomery, you're right

6    apparently you're not a lawyer, so let me give you a very

7    brief basis for what I'm going to do.

8        The United States has a state court system for whatever

9    state you're in, and it has a federal system.  You're in the

10   federal system.  There are a number of judicial districts, I

11   think 93 or 94 of them.  And the rules provide that if you

12   want something to happen in Western Washington, you need to

13   come to Western Washington.  A court in Florida can't compel

14   someone who is not within the jurisdiction of that court to

15   do much of anything.  So, it is appropriately here before me.

16       I'm not hearing the merits of your case, so thank you for

17   understanding that and not trying to argue them, because it

18   really is irrelevant to the issue that's before me.

19           MR. MONTGOMERY:  I understand.

20           THE COURT:  The issue that's before me is the one of

21   the discovery that was ordered out of this district under the

22   motion to compel, or actually apparently the subpoena.  And

23   that is properly before me.  It doesn't really matter if

24   we're in Florida or if we're in Washington, D.C., the

25   subpoena that came out, came from this court.

1      In terms of your questions about the discovery deadline

2  and why did they delay.  That's something you can take up

3  with your judge in Washington, but it really is not something

4  that I'm going to weigh in on.

5      So, I am going to grant the motion to compel.  Mr. Stahl,

6  when do you want to take -- I assume you asked for documents

7  and you asked for a deposition?

8          MR. STAHL:  That's correct.

9          THE COURT:  All right.  When are you going to do it?

10         MR. STAHL:  We would work with the witness, within

11  30 days to schedule it.

12         THE COURT:  Mr. Burgyan, any problem with that?

13         MR. BURGYAN:  No.

14         THE COURT:  All right.  Then --

15         MR. MONTGOMERY:  Your Honor --

16         THE COURT:  Yes.

17         MR. MONTGOMERY:  -- would you at least allow us to

18  appeal to the Ninth Circuit, the decision, before compelling

19  him to appear?

20         THE COURT:  No.  You should talk to your lawyer, sir.

21  There are rules about how to take appeals.  This is not a

22  question which is normally appealable.  There is a procedure

23  whereby you can seek extraordinary relief.  But I am not

24  aware of how this ruling would trigger that, particularly on

25  the bases that you've opposed the motion.

1      So, I'm going to grant the motion to compel, that's both

2   production of documents and the deposition.  I'm not going to

3   require re-service of the subpoena, since apparently

4   Mr. Burgyan has a copy of it.  And I'm going to direct that

5   it occur within 30 days.

6      And to the extent that there has been an oral motion to

7   allow an interlocutory appeal to the Ninth Circuit on that

8   ruling, I'm going to deny it.

9      Mr. Montgomery, the fact that I've denied it doesn't mean

10   that you can't go up to the circuit and ask them to do it.

11   But I'll simply tell you, it's a very unusual motion to see

12   be successful.

13      Mr. Stahl, anything further on behalf of the defendants?

14          MR. STAHL:  No.  Thank you, Your Honor.

15          THE COURT:  Mr. Burgyan, any questions I can answer?

16          MR. BURGYAN:  No.  Thank you.

17          THE COURT:  And you'll provide that information and

18   work out a date?

19          MR. BURGYAN:  Yes.

20          THE COURT:  Then we'll be in recess.

21   Thank you.

22              (The proceedings recessed.)

23

24

25

# C E R T I F I C A T E

I, Debbie K. Zurn, RMR, CRR, Court Reporter for the United States District Court in the Western District of Washington at Seattle, do hereby certify that I was present in court during the foregoing matter and reported said proceedings stenographically.

I further certify that thereafter, I have caused said stenographic notes to be transcribed under my direction and that the foregoing pages are a true and accurate transcription to the best of my ability.

/s/ *Debbie Zurn*

DEBBIE ZURN
OFFICIAL COURT REPORTER